UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------x
MOSES GREENFIELD,

     Plaintiff,

 -against-

WESTCHESTER FIRE INSURANCE
COMPANY

     Defendant.
-------------------------------------------------x

**MEMORANDUM AND ORDER**

Case No. 1:19-cv-3761 (FB) (CLP)

*Appearances*:
*For the Plaintiff*:
EDWARD N. GEWIRTZ
Law Offices of Edward N. Gewirtz
60 East 42nd Street
Suite 4600
New York, NY 10165

*For the Defendant*:
DANIEL WAGNER LONDON
JAMES THOMAS HARDIN DEAVER
JAN H. DUFFALO
London Fischer LLP
59 Maiden Lane
Floor 39
New York, NY 10038

MARIA JORGELINA FOGLIETTA
London Fischer LLP
180 Maiden Lane
Suite 901
New York, NY 10038

**BLOCK, Senior District Judge:**

  Plaintiff Moses Greenfield ("Greenfield") brings a cause of action for breach of contract against Westchester Fire Insurance Company ("WFIC"). Greenfield is the third-party beneficiary of an insurance policy that WFIC issued to Global Switching, Inc. Dollar Horizon Telecommunications Inc. ("Global"), the parent

1

company of Dollar Phone Services, Inc. ("DPS"), where Greenfield is an officer. The parties dispute whether WFIC's policy provides for indemnification of Greenfield for a contempt proceeding against him. WFIC has moved for summary judgment on Greenfield's sole claim. For the reasons that follow, summary judgment is granted for WFIC.

## I.   FACTS

The following facts are taken from the pleadings, the parties' Rule 56.1 statements, and supporting documentation. They are undisputed unless otherwise noted.

WFIC issued a policy to Global or one of its entities[1] for the period of May 26, 2017 to May 26, 2018 that included indemnification for certain legal claims brought against Global's directors and officers, as well as certain third parties. Greenfield was the president of DPS, a subsidiary of Global, during the coverage period. In July 2016 and while Greenfield was president, DPS acquired assets from

---

[1] Greenfield states that Global was the policyholder, while WFIC believes that it was Dollar Phone Access, Inc., a subsidiary of Global. *See* P. Resp. to Def. SOF at ¶ 13. However, the identity of the policyholder is irrelevant. The parties do not contest that it has any bearing on Greenfield's claim or the motion before the Court, as Greenfield apparently was a third-party beneficiary of the policy in either scenario. For the sake of clarity, the Court refers to the policyholder as Global throughout this order, though it takes no position as to whether this is factually accurate.

Atlas Trading Conglomerate, Inc. ("Atlas"), another subsidiary of Global. After the acquisition, Atlas ceased operations.

Prior to DPS's acquisition of the company, Atlas was embroiled in a complex lawsuit with various local cellular exchange carriers affiliated with AT&T Inc. The suit resulted in a 2013 settlement to which Atlas and the local carriers were parties.[2] Subsequently, Atlas attempted to contest the settlement and refused to comply with its terms. In June 2014, the local carriers sued Atlas to enforce the settlement agreement. As a result, a federal district court in Texas in October 2016 granted an injunction against Atlas to enforce the terms of the settlement, which included future payments to the local carriers. By this time, however, Atlas was no longer doing business and did not make the payments. The purchaser of Atlas's assets, DPS, also initially did not complete the payments. DPS believed at the time that it was not liable for the payments, since it was not party to the 2013 settlement.[3] In December 2016, the local carriers filed a motion for contempt against Atlas for its failure to comply with the October 2016 injunction.

On February 7, 2018, the Texas court held a contempt hearing attended by Greenfield and others. Three weeks later, the court issued an order finding that Atlas and its officers and representatives, including Greenfield, were in contempt of court

---

[2] Atlas was known as Dollar Phone Access, Inc. until June 24, 2016. It is referred to as Atlas throughout this order for the sake of clarity.
[3] DPS later completed the payments due from July 2016 onward.

3

and sanctioned them collectively $100,000 for failing to comply with the court's October 2016 order. Following this order, Greenfield notified WFIC in March 2018 of the contempt order against him and sought indemnification for the sanctions, attorneys' fees and costs owed to the judgment creditors, and his own attorneys' fees and costs.[4] WFIC denied Greenfield's claim the following month. Greenfield now sues WFIC, claiming that he was owed indemnification for his defense in the contempt proceeding pursuant to the WFIC insurance policy of which he was a third-party beneficiary.

## II. POLICY LANGUAGE

The WFIC policy provides that the "Insurer shall pay the Loss of the Insureds which the Insureds have become legally obligated to pay by reason of an Employment Practices Claim *first made* against the Insureds during the Policy Period." Def. Mot. Summ. J., Ex. A at 15 (emphasis added). In other words, the claim must be made against the insured during the policy period in order for coverage to apply. In addition, the policy requires the insured to provide notice of the claim to WFIC within 60 days of the individual first becoming aware of the claim. *See* Def. Mot. Summ. J., Ex. A at 21.

---

[4] The contempt order was later vacated and the sanctions were not required to be paid, but Greenfield still seeks recovery for his own attorneys' fees and costs as well as those of the judgment creditors in the contempt proceeding.

4

In addition, the policy provides instruction as to what constitutes a single claim under the policy: "All Claims arising out of the same Wrongful Act and all Interrelated Wrongful Acts shall be deemed to constitute a single Claim, and such Claim shall be deemed to have been made at […] the time at which the earliest Claim involving the same Wrongful Act or Interrelated Wrongful Acts is first made". Def. Mot. Summ. J., Ex. A at 21. Put simply, claims arising out of interrelated acts will be considered a single claim under the policy, and the 60 days to notify WFIC begins to toll at the date of the earliest claim.

### III.   SUMMARY JUDGMENT

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). In determining whether summary judgment is appropriate, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015).

### IV.   ANALYSIS

The issue before the Court is whether WFIC is entitled to summary judgment on Greenfield's breach of contract claim. To show breach of contract, Greenfield must demonstrate that: (i) there was a contract, (ii) Greenfield performed, (iii) WFIC

5

did not perform, and (iv) there are articulable damages attributed to the breach. *See First Inv'rs Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162 (2d Cir. 1998). Ultimately, Greenfield's claim hinges on whether the contempt proceeding against him was a claim first made during the policy period.

The parties do not dispute that Greenfield nor anyone at the policyholder notified WFIC of the proceedings involving Atlas in 2014 or of the 2013 settlement agreement. *See* P. Resp. to Def. SOF at ¶ 28. This failure to notify WFIC was contrary to the policy. The policyholder had the obligation to notify the carrier within 60 days of a claim first being brought against an insured. Had Greenfield or someone else at the policyholder notified WFIC when the settlement was made or when the resulting litigation began, perhaps Greenfield's contempt proceeding would have been covered. However, this did not occur.

To surpass this barrier to coverage, Greenfield argues that he is entitled to indemnification because the contempt proceeding was a new claim, separate from the 2013 settlement and resulting litigation. At oral argument, his counsel contended that "Greenfield personally only had liability here once the Texas court […] asked everybody to show cause" in the contempt proceeding. Tr. 6. As a result, Greenfield argues, he could not have notified WFIC in 2013 or 2014 since he was not a party to the lawsuit at that time.

6

Greenfield's arguments are unavailing. He maintains that he could not have known that he would be held personally liable for the apparent misdeeds of Atlas until he was made a party to the contempt proceeding, and that therefore notifying WFIC in March 2018 was as soon as he practically could have done so. However, the facts undermine this argument. Greenfield waited until after the contempt order was issued to notify WFIC. The hearing, at which he appeared, was held weeks prior to the order being issued, and the motion for contempt was filed in 2017. Greenfield was the head of the company that purchased Atlas in 2016, and the injunction was issued against Atlas after its acquisition. It is difficult to understand how waiting until March 2018 to inform WFIC was the only practicable outcome. Greenfield did not need to predict that he would be held in contempt to benefit from the policy. He or someone else at the policyholder simply had to comply with the obligation to timely inform WFIC of the 2013 settlement and resulting litigation. Had they done so, the expenses related to the contempt proceeding may have been covered as interrelated with the original claim, but no one informed WFIC at the appropriate time.

Greenfield's argument that the contempt proceeding is attenuated from the 2013 settlement and resulting litigation also lacks merit. He argues that the contempt proceeding against him does not fall within the "interrelated wrongful acts" language of the policy, since liability accrued against him in his personal capacity only during

7

the contempt proceeding. Def. Mot. Summ. J., Ex. A at 21. However, the unambiguous language of the policy contradicts this argument.

When the language of an insurance policy is unambiguous, the words of the policy must be given their plain and ordinary meaning. The language is unambiguous if it has a definite and precise meaning about which there can be no reasonable difference of opinion. *See White v. Continental Cas. Co.*, 9 N.Y.3d 264, 267 (2007). That is the case before the Court. Even when construed in the light most favorable to Greenfield, the contempt proceeding against him cannot be viewed as anything but interrelated with the 2013 settlement and resulting litigation. While Greenfield attempts to distinguish the events by focusing on the moment at which his personally liability attached, there is no such distinction in the policy. There is no policy language related to the inclusion of new parties in an ongoing dispute. "All [the policy] requires for a related wrongful act is a common nexus," not common parties. Tr. 5. Greenfield's failure to comply with the 2016 Texas court order to enforce the 2013 settlement was the very thing for which he was held in contempt. The WFIC policy clearly counts the contempt proceeding as one interrelated claim with the 2013 settlement and the series of events that followed, since they are interrelated wrongful acts. The policy explicitly excludes coverage of those events because the claim was not first brought during the coverage period.

8

There is no genuine dispute as to the material facts governing Greenfield's claim. As a matter of law, he was not entitled to coverage under the policy. Therefore, summary judgment is granted to WFIC on Greenfield's sole claim.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is **GRANTED**.

**SO ORDERED.**

                                                      _/S/ Frederic Block_____
                                                      FREDERIC BLOCK
                                                      Senior United States District Judge

Brooklyn, New York
March 17, 2022